# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

versus                                          CRIMINAL NO. 23-109-SDD-RLB

JAKE RAYBON

## RULING

This matter is before the Court on the Motion to Dismiss the Indictment[1] filed by Defendant, Jake Raybon ("Defendant"). The United States ("the Government") filed an Opposition[2] to Defendant's motion, to which Defendant filed a Response,[3] and the Government filed a Reply.[4] For the reasons below, Defendant's Motion will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Defendant has been charged by Indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[5] He has numerous prior convictions from various Louisiana state courts, including: (1) August 2012 simple burglary in the 23rd Judicial District Court ("JDC");[6] (2) September 2012 two counts of attempted simple burglary in the 19th JDC;[7] (3) October 2012 felony theft, possession of Xanax, and aggravated flight from an officer in the 21st JDC;[8] (4) September 2016 unauthorized entry

---

[1] Rec. Doc. 18.
[2] Rec. Doc. 29.
[3] Rec. Docs. 36.
[4] Rec. Doc. 39.
[5] Rec. Doc. 1.
[6] Rec. Doc. 7, p. 6.
[7] *Id.* at p. 5.
[8] *Id.* at pp. 3-4, 6.

of an inhabited dwelling;[9] (5) August 2015 attempted simple burglary in the 21st JDC;[10] (6) and January 2021 possession of a firearm by a convicted felon, illegal carrying of a firearm with a controlled dangerous substance, and possession of methamphetamine.[11]

Defendant filed the instant motion to dismiss the Indictment on the grounds that 18 U.S.C. §§ 922(g)(1) is unconstitutional under the Second Amendment facially and as applied to him. Defendant primarily relies upon the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,[12] and *United States v. Rahimi*.[13] The Government opposes the Motion, arguing that § 922(g)(1) is constitutional facially and as applied to Defendant.

The Court can easily dispense with Defendant's facial challenge to § 922(g)(1) as it is foreclosed by the Fifth Circuit's decision in *United States v. Diaz*, wherein the court held that § 922(g)(1) was constitutional as applied to Diaz, thus finding § 922(g)(1) facially constitutional.[14] Accordingly, the Court will consider only Defendant's as-applied challenge to § 922(g)(1).

## II.    MOTION TO DISMISS

Federal Rule of Criminal Procedure 12(b)(1) provides that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[15] Specifically, "a party may move to dismiss an indictment based on a defect in the indictment, including failure to state an offense."[16] Courts may resolve

---

[9] *Id.* at p. 8.
[10] *Id.*
[11] *Id.* at pp. 8-9.
[12] 597 U.S. 1 (2022).
[13] 602 U.S. 680 (2024).
[14] 116 F.4th 458, 471-72 (5th Cir. 2024).
[15] Fed. R. Crim. P. (12)(b)(1).
[16] *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)) (cleaned up).

any defects before trial when the motion presents a question of law.[17]   The primary question here - whether § 922(g)(1) is unconstitutional as applied to Defendant — does just that.

## III.    THE SECOND AMENDMENT

The Supreme Court first recognized an individual right under the Second Amendment to keep and bear arms for self-defense in *District of Columbia v. Heller*.[18] On this ground, the High Court held unconstitutional the District of Columbia's "ban on handgun possession in the home" and "its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."[19] However, the Court emphasized that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."[20] Accordingly, under *Heller*, these prohibitions are "presumptively lawful regulatory measures."[21]

In *Bruen*, the United States Supreme Court advanced a two-step framework for Second Amendment constitutional challenges.[22]   Specifically, the Court held:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[23]

"This historical inquiry that courts must conduct will often involve reasoning by analogy ...."[24] And "whether a historical regulation is a proper analogue for a distinctly modern

---

[17] *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).
[18] 554 U.S. 570 (2008).
[19] *Id.* at 635.
[20] *Id.* at 626.
[21] *Id.* at 627 n.26.
[22] 597 U.S. at 24
[23] *Id.* (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)).
[24] *Id.* at 28.

firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'"[25] This involves finding "a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[26]

In *United States v. Rahimi*, the Supreme Court further clarified the "historical analogue" requirement.[27] "These precedents were not meant to suggest a law trapped in amber."[28] "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition."[29] The Court found that 18 U.S.C. 922(g)(8) was constitutional on its face and as applied to *Rahimi* because the United States' "firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms."[30]

In *Diaz*, the Fifth Circuit applied this framework to § 922(g)(1).[31] The *Diaz* court considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our Nation's history of firearm regulation."[32] The Fifth Circuit held that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) ...."[33] Accordingly, the Government bears the burden to demonstrate that the application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[34]

---

[25] *Id*. at 28–29 (citing C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)).
[26] *Id*. at 30.
[27] 602 U.S. 680, 691 (2024).
[28] *Id*.
[29] *Id*. at 692.
[30] *Id*. at 690.
[31] 116 F.4th 458.
[32] *Id*. at 467 (citing *Rahimi*, 602 U.S. at 692).
[33] *Id*.
[34] *Id*. (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted).

In determining whether a historical law is relevantly similar, the Fifth Circuit instructs district courts to focus "on the why and how [and] ascertain whether the challenged regulation 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation."[35] In *Diaz*, the Fifth Circuit held that § 922(g)(1)'s justification (the "why") was "relevantly similar" to the examples of punishing felonies with death: "to deter violence and lawlessness."[36] The court also reasoned that the method by which § 922(g)(1) reaches this goal (the "how")—permanent disarmament—was consistent with historical methods because, if felonies were historically punished with death, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible."[37]

Notably, the *Diaz* decision was not a blanket holding that all felonies may serve as a constitutional predicate offense to § 922(g)(1); rather, it is applicable to only those that "fit[ ] within this tradition of serious and permanent punishment[,]" such as death or permanent estate forfeiture.[38] The *Diaz* court specifically addressed a predicate conviction of theft, finding that there was a significant history and tradition of severe punishment for theft by looking to the historic laws of three states: Massachusetts, New York, and Virginia.[39] Further, the Fifth Circuit found that the historical "going armed" and forfeiture of weapons laws "punished 'those who had menaced others with firearms' ... [and] provide[d] for permanent arms forfeiture as a penalty."[40] "Imposing permanent

---

[35] *United States v. Quiroz*, 125 F.4th 713, 718 (5th Cir. 2025) (quoting *Bruen*, 597 U.S. at 29).
[36] *Diaz*, 116 F.4th at 469.
[37] *Id.*
[38] *Id.* at 470.
[39] *Id.* at 468.
[40] *Id.* at 470–71 (citing *Rahimi*, 602 U.S. at 697; Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 53).

disarmament as a punishment is also within our Nation's history and tradition."[41] The Fifth Circuit held that, "taken together, laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz."[42]

Similarly, in *United States v. Bullock*, the Fifth Circuit rejected a § 922(g)(1) challenge by a defendant with prior convictions of aggravated assault and manslaughter.[43] "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."[44] "The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'"[45] The Fifth Circuit reasoned that "[t]here can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes."[46] The court looked to the "historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a 'very dangerous offense[, ]'"[47] and to the fact that the defendant's conduct was "'relevantly similar' to, and arguably more dangerous than, the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture."[48]

More recently, in *Quiroz*, the Fifth Circuit addressed 18 U.S.C. § 922(n),

---

[41] *Id.* at 471.
[42] *Id.*
[43] 123 F.4th 183, 184–85 (5th Cir. 2024).
[44] *Id.* at 185 (quoting *Rahimi*, 602 U.S. at 693).
[45] *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)); *see also Folajtar v. Attorney Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone is danger[.]")).
[46] *Id.* (citation omitted).
[47] *Id.* (citation omitted).
[48] *Id.* (quoting *Rahimi*, 602 U.S. at 697).

possession of a firearm while under indictment for a felony.[49]  There, the defendant was under indictment for burglary and bail jumping.[50] The Fifth Circuit analyzed the history of burglary as a capital offense, finding a tradition because seven states at the founding deemed burglary a capital offense.[51] The court also found that unanimity between the states was not necessary to show history and tradition.[52]

At present, neither the Supreme Court nor the Fifth Circuit has set a minimum number of historic laws required to establish a history and tradition of serious and permanent punishment, and in *Diaz*, the Fifth Circuit was satisfied with a history and tradition looking at the laws of only three states.[53] In *Quiroz*, the court was satisfied with the history and tradition of seven states.[54] From these cases, the Court cannot ascertain a brightline rule for determining how many states' laws are necessary to establish a tradition, but the Court finds guidance from *Diaz* and *Quiroz*.

## IV.    THE SECOND AMENDMENT AND PREDICATE OFFENSES

### A. Parole

The Government contends that Defendant's commission of the instant offense charged in this Court while on parole ends the inquiry altogether.  Defendant contends that this argument is foreclosed by *Diaz*. However, as the Government points out, the Fifth Circuit recently ruled in *United States v. Giglio* that "the government may disarm those who continue to serve sentences for felony convictions."[55] The *Giglio* court relied heavily on the "well-reasoned" opinion by the Sixth Circuit in *United States v. Goins*,

---

[49] 125 F.4th at 715.
[50] *Id.*
[51] *Id.* at 724.
[52] *Id.* at 725.
[53] 116 F.4th at 468.
[54] 125 F.4th at 724.
[55] 126 F.4th 1039, 1044 (5th Cir. 2025).

wherein the Sixth Circuit held that "'our nation's historical tradition of forfeiture laws …

supports disarming those on parole, probation, or supervised release."[56] Accordingly, the

fact that Defendant was indicted on the charge of felon in possession of a firearm while

on parole establishes an appropriate predicate to overcome Defendant's as-applied

challenge. Although this does indeed end the inquiry, the Court will briefly address a few

of Defendant's other arguments.

### B. Restoration of Civil Rights

Defendant also maintains that the restoration of his civil rights by the State of

Louisiana for his theft conviction serves to bar consideration of this conviction as a

predicate under Section 922(g)(1).  This argument misses the mark.  First, as detailed

above, there are numerous other convictions that serve as proper predicates, namely

felon in possession of a firearm, drug possession, burglary, and possession of a firearm

with controlled substances.  Second, the argument offered by Defendant regarding the

restoration of his civil rights has been made, and rejected, by this very Court.

Defendant argues that his theft conviction is not a predicate for his prosecution

under Section 922(g)(1) because his civil rights were restored by operation of Louisiana

law.[57] The Government acknowledges that, under Section 922(g)(1), not all convictions

are prohibiting:  "a conviction for which the felon's civil rights have been restored 'shall

not be considered a conviction … unless such … restoration of civil rights expressly

provides that the person may not ship, transport, possess, or receive firearms.'"[58]

Nevertheless, a felony conviction for which rights have been restored remains a predicate

---

[56] *Id.* (quoting *United States v. Goins,* 118 F.4th 794, 801-02 (6th Cir. 2024)(citing *United States v. Moore*, 111 F.4th 266, 269-72 (3d Cir. 2024))).
[57] Rec. Doc. 36, pp. 2-9 (citing La. R.S. 14:95:1).
[58] Rec. Doc.39, pp. 2-3 (quoting 18 U.S.C. § 921(a)(20); *see Caron v. United States*, 524 U.S. 308 (1998)).

for prosecution under Section 922(g)(1) pursuant to the "unless clause" of Section 921(a)(20) if the felon is "nevertheless expressly deprived of the right to possess a firearm by some provision of the restoration law or a procedure of the state of the underlying conviction."[59]   While there are no Fifth Circuit decisions that directly address whether Louisiana's concealed carry laws trigger the "unless clause," Defendant acknowledges that some Louisiana district court cases have held so.[60]   However, Defendant contends the Supreme Court's decision in *Bruen* changed the landscape of Second Amendment law such that these cases cannot stand.  The Court disagrees.

In *United States v. Braun*,[61] the identical argument was made in this Court as advanced by the Defendant herein regarding the "unless clause." This Court held that Braun's prior state felony conviction rendered him ineligible under Louisiana state law to obtain a concealed handgun permit and thus qualified as a predicate offense for prosecution under the federal statute prohibiting possession of firearms.[62]   And the Government notes that "this Court and other district courts within the circuit have uniformly held that Louisiana's refusal to issue handgun permits to felons constitutes a restriction on the right to possess and transport firearms that triggers the 'unless clause'."[63]

---

[59] *United States v. Dupaquier*, 74 F.3d 615, 617 (5th Cir. 1996).
[60] Rec. Doc. 36, p. 6.
[61] 453 F. Supp. 3d 883 (M.D. La. 2020).
[62] *Id.*
[63] *See United States v. Braun*, 453 F. Supp. 3d 883 (M.D. La. 2020) (Dick, C.J.); *United States v. Harris*, No. 1:17-CR-71-TH, 2018 WL 6498715, at *9 (E.D. Tex. Dec. 11, 2018); *Axton v. United States Dep't of Justice*, Civ. No. 16-5419, 2016 WL 4496165 (E.D. La. August 25, 2016); *United States v. Viola*, No. 6:15-CR-00253-01, 2016 WL 3040695 (W.D. La. May 24, 2016); *United States v. Sam*, No. CR 6:15-00254, 2016 WL 1600229 (W.D. La. Mar. 23, 2016), *report and recommendation adopted*, 2016 WL 1573002 (W.D. La. Apr. 18, 2016).

The Government also cites to an unpublished Fifth Circuit opinion in *United States v. Kyllonen*, wherein the panel held that a Michigan restriction on gun permits made that defendant ineligible for a restoration-of-rights exemption from prosecution under Section 922(g)(1).[64]  Additionally, the Sixth and Ninth Circuits also held that permit restrictions similar to Louisiana's will trigger the "unless clause," which keeps felons with restored rights within the prohibition under Section 922(g)(1).[65]

The Court is unpersuaded that *Bruen* changes the analysis in the foregoing cases. Even if it does, Defendant has numerous prior felonies that are proper predicates under Section 922(g)(1).

### C. Prior Felony Convictions as Predicates

Several of Defendant's prior convictions have uniformly been held to constitute proper Section 922(g)(1) predicates by the federal district courts in Louisiana and within this circuit.  In fact, the exact argument advanced by Defendant in this matter regarding simple burglary was rejected by at least two sections of this Court.  In *United States v. Crocklem*,[66] after conducting the applicable analysis, the Court concluded that

> there is a history and tradition of punishing burglary with death or forfeiture of property, thus it "fits within this tradition of serious and permanent punishment.' *Diaz*, 116 F.4th at 470. The Fifth Circuit has recognized that many states at the founding punished burglary with death, which means that the lesser punishment of disarmament is consistent with this tradition. *Quiroz*, 125 F.4th at 724; Diaz, 116 F.4th at 469.[67]

The Court noted that burglary is considered a dangerous felony.[68]

---

[64] 774 F. App'x 212, 213 (5th Cir. 2019) (per curiam).
[65] *See United States v. Sanford*, 707 F.3d 594 (6th Cir. 2012); *Van der Hule v. Holder*, 759 F.3d 1043 (9th Cir. 2014).
[66] No. 24-37-JWD-SDJ, 2025 WL 1261610 (M.D. La. Mar. 28, 2025).
[67] *Id.* at *7.
[68] *Id.* at *9 (citing *United States v. Taylor*, 495 U.S. 575, 588 (1990)).

The Court also rejected the argument that Louisiana's simple burglary is not analogous to common law burglary, noting that "*Bruen* requires this Court to find a historical analogue to Defendant's conviction, not a historical twin."[69]  The Court then looked to the "why" and "how" of the regulation and concluded that "[t]he justifications behind historically severely punishing those convicted of committing burglary and the disarmament of those convicted of simple burglary (the "why") are relevantly similar.[70] The Court also rejected the defendant's argument under the Armed Career Criminals Act ("ACCA") that "the categorical approach as defined in *Taylor* should be used to determine whether an historic law is sufficiently analogous to a modern law," noting that the defendant offered no jurisprudence to support such an argument.[71]

The Court also concluded that the "how" is relevantly similar:

> The Fifth Circuit held in *Diaz* that historical laws punishing theft with death were sufficient analogues for the "how" inquiry, because capital punishment and estate forfeiture, like § 922(g)(1) disarmament, are permanent punishments. *Diaz*, 116 F.4th at 469. Here, burglary was traditionally punished by death or estate forfeiture, a permanent punishment, *see Quiroz*, 125 F.4th at 724, and § 922(g)(1) provides for permanent disarmament. Under *Diaz*, the "how" is relevantly similar, particularly since the *Bruen* analysis requires a historical analogue, not a historical twin. *Bruen*, 597 U.S. at 30.[72]

Thus, the Court denied the defendant's Motion to Dismiss the Indictment finding that, "because Louisiana's simple burglary and common law burglary carry the same risks of violence, and because the historical laws and § 922(g)(1) provide for serious and

---

[69] *Id.* at *8 (citing *Bruen*, 597 U.S. at 30).

[70] *Id.*

[71] *Id.* The Court stated: "The categorical approach only allows a conviction to serve as an ACCA predicate 'if the statute's elements are the same as, or narrower than, those of the generic offense.' *Descamps v. United States*, 570 U.S. 254, 257 (2013). The Supreme Court in *Bruen* seemed to reject this idea, as the Second Amendment analysis requires a 'representative historical analogue, not a historical twin.' 597 U.S. at 30. Therefore, this Court will not apply the categorical approach to determine if common law burglary and simple burglary are analogous." *Id.*

[72] *Id.* at *9.

permanent punishment, common law burglary is a sufficient historical analogue to simple burglary."[73]  The Court continued: "The application of § 922(g)(1) to Defendant through his simple burglary conviction fits within the history and 'tradition of serious and permanent punishment.'"[74]

This Court adopted Judge deGravelles' extensive reasoning and analysis in *United States v. Stewart*.[75] Accordingly, Defendant's predicate felony of simple burglary supports the application of § 922(g)(1).

Defendant's prior convictions involving drug possession are also proper predicates under § 922(g)(1) as determined by this Court in *United States v. Davis*,[76] wherein the Court relied on "the overwhelming majority of district courts" that found this a proper predicate conviction.[77]  Defendant's prior conviction for felon in possession of a firearm has likewise been determined by numerous courts to be a proper predicate conviction.[78]

---

[73] *Id.*

[74] *Id.* (citing *Diaz*, 116 F.4th at 470).

[75] No. 24-57-SDD-SDJ, 2025 WL 1829423 (M.D. La. July 2, 2025).

[76] No. 22-93-JWD-SDJ, 2025 WL 964439 (M.D. La. Mar. 31, 2025)

[77] *Id.* at *$-*5 (citing *United States v. Wilson*, No. 22-238, 2024 WL 4436637, at *4 (E.D. La. Oct. 6, 2024); *United States v. Carter*, No. CR 23-22, 2024 WL 4723236, at *6 (E.D. La. Nov. 8, 2024); *United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (holding 922(g)(1) constitutional as applied to a defendant with predicate drug offenses); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding 922(g)(1) constitutional as applied to a defendant with predicate drug convictions); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding 922(g)(1) constitutional as applied to defendant with predicate drug-distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (same); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding 922(g)(1) constitutional as applied to defendant with predicate drug convictions); *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038, at *4–7 (W.D. Pa. Sept. 26, 2023) (finding 922(g)(1) constitutional as applied to defendant with one predicate drug-trafficking conviction)).

[78] *United States v. Davis*, No. 22-93-JWD-SDJ, 2025 WL 964439 (M.D. La. Mar. 31, 2025)(citing *United States v. Wilson*, No. 22-238, 2024 WL 4436637, at *4 (E.D. La. Oct. 6, 2024); *United States v. Garner*, No. 5:24-00112-01, 2024 WL 4820794 (W.D. La. Nov. 18, 2024); *United States v. Hines*, No. 23-276, 2025 Wl 974238 (E.D. La. April 1, 2025)).

### D. Dangerousness

This Defendant's criminal history is "replete with convictions of crimes punishable beyond one year."[79]  Moreover, the underlying facts that led to the current indictment are as follows, as alleged by the Government:

> In October 2023, defendant's ex-girlfriend ("Jane Doe") called 911 to report that defendant was attempting to break into her home. She explained that there were active warrants for his arrest and that she had a protective order against him. While Doe hid in her bedroom with her three-year-old daughter, defendant—armed with a Glock 9mm pistol—broke into the home using a sledgehammer. Once inside, defendant fired the pistol, prompting Doe's boyfriend to return fire. Defendant then fired several more shots inside the home before fleeing the scene.[80]

In his Reply, Defendant does not challenge or deny these underlying facts. According to the Fifth Circuit in *United States v. Davis*, "'[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others.'"[81] The Fifth Circuit continued: "Consistent with this history, when a court finds that an 'individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.'"[82]  Thus, in determining dangerousness, the Court takes into consideration the Defendant's criminal history but also the context in which the charged crime was committed.

In *United States v. Carter*, the district court for the Eastern District of Louisiana noted that the *Diaz* court held that "Section 922(g)(1) is constitutional as applied to an individual previously convicted of theft, which the court recognized did 'not inherently

---

[79] *United States v. Davis*, 2025 WL 958265, at *2 (5th Cir. Mar. 31, 2025).
[80] Rec. Doc 29, pp. 1-2.
[81] *Davis*, at *3 (quoting *United States v. Rahimi*, 602 U.S. 680, 693 (2024); *see also Bullock*, 2024 WL 4879467, at *1.).
[82] *Id.* (quoting *Rahimi*, 602 U.S. at 693).

involve a threat of violence.'"[83]   In concluding that prior convictions involving guns and drugs satisfied the dangerousness requirement, the court explained:

> Additionally, application of the felon-in-possession statute to drug criminals aims to address a *risk* of violence. Congress has long recognized "that drugs and guns are a dangerous combination."[84] "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."[85] "This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons."[86]

The argument that this Defendant is not dangerous, in light of his extensive criminal history and the underlying facts of the crime charged in this district, strains credulity.  The Court finds that the Government has met its burden of demonstrating that applying Section 922(g)(1) to this Defendant "is consistent with this Nation's historical tradition of firearm regulation."[87]

## V.    CONCLUSION

For the above reasons, Defendant's Motion to Dismiss the Indictment[88] is DENIED. The Court will set this matter for trial by separate notice.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this *14* day of August, 2025.

*Shelly D Dick*

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[83] 2024 WL 4723236, at *7 (E.D. La. Nov. 8, 2024)(quoting *Diaz*, 116 F.4th at 471, n.5).
[84] *Id.* (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.")(original emphasis).
[85] *Id.* (quoting *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).
[86] *Id.* (quoting *United States v. Jackson*, 110 F.4th at 1128).
[87] *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 17).
[88] Rec. Doc. 18.